[Civil No. 2777.   Filed December 3, 1928.]

[272 Pac. 95.]

ANA FROHMILLER, as Auditor of the State of Arizona, Appellant, v. J. D. HALSTEAD LUMBER COMPANY, a Corporation, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Messrs. Struckmeyer, Jennings & Strouss, for Appellee.

ROSS, C. J.—The plaintiff, J. D. Halstead Lumber Company, filed its complaint in the superior court of Maricopa county against the defendant, Ana Frohmiller, state auditor, praying for a writ of *mandamus* directing said auditor to approve, allow, and draw a warrant against the state for a claim of three dollars, the agreed value of five bundles of lath furnished for road construction by prison labor in Pinal county.

The answer of the defendant was to the effect that there was no appropriation and no funds available to pay for material furnished the state when engaged in road construction with prison labor.

The case was submitted to the court upon an agreed statement of facts, and upon such statement the court decided that the auditor should approve the claim and draw a warrant therefor, and entered judgment accordingly. Defendant appeals.

As shown by the agreed statement of facts, the controversy is over the proper construction of several legislative acts, making and regulating appropriations, beginning with chapter 9, title 50, Civil Code of 1913, and ending with chapter 58, Laws of 1927, amending chapter 9.

Chapter 9 as originally written authorized the board of control (succeeded by the board of directors of state institutions) at its option to turn over to the state engineer "persons convicted of crime and sentenced to imprisonment in the state prison to labor and be employed upon the construction, repair, or maintenance of state roads, highways and bridges within this state"; and provided that the expense incurred thereby should be paid from the following funds: From the prison maintenance fund that proportion equaling the maintenance cost at the prison; from the general fund of the state the purchase of equipment, tools, machinery and animals, and the remainder from the state road tax fund of the county in

which the prisoners worked. Chapter 35, Laws of 1915, amending chapter 9, provided that such expenses be paid as follows: Out of the prison maintenance fund that proportion equal to the cost of the maintenance at the prison, and the remainder out of the state road tax fund, and directed an annual levy and collection of taxes in the sum of $60,000 to be paid into the latter fund. Chapter 58, Laws of 1927, also amendatory of chapter 9, provides for such expenses to be paid out of the prison maintenance fund that proportion equal to the cost of maintenance at the prison, and the balance out of an appropriation "from the general fund, from such moneys not otherwise appropriated" $60,000 for 1926–27 and $60,000 for 1927–28.

On June 30th, 1927, that being the end of the fiscal year, there was an unexpended balance of $32,000 in that year's appropriation to care for the expenses of prisoners employed in the construction of roads, etc. The auditor, acting under section 2, chapter 35, Laws of 1922 (Sp. Sess.), known as the Financial Code, on July 1st, 1927, reverted the said balance of $32,000 to the general fund.

It is contended by plaintiff that the action of the auditor, in reverting the said balance to the general fund, was not authorized, for the reason that section 2 of the "Financial Code," while providing that all unexpended balances shall revert to the general fund at the end of the fiscal year, excepts from such rule balances theretofore appropriated for the construction of roads, etc.

We believe it is conceded by both sides that, if the appropriation which was discontinued by the auditor was for road construction, it was improperly reverted, but that, if it was for the maintenance of prisoners working upon the highways, it was properly discontinued. Which of these alternatives is correct depends upon the construction to be given to said

section 2 and other cognate provisions of the Financial Code.

The Financial Code was passed in 1922, and is published as chapter 35 of the laws of that year, and one of its express purposes was to abolish all continuing appropriations and to revert all unexpended balances at the end of the fiscal year to the general fund of the state. To that end, all appropriations for the different departments, institutions, and agencies of the state were to be made out of the general fund and to ''remain an unsegregated part of the General Fund, subject to application to the purpose of such credit or appropriation'' (section 14), and, if not used during the fiscal year for which it was intended, to be reverted to the general fund. Under section 2 there are mentioned three funds, and only three, in which any unexpended balances at the end of the fiscal year were not to be reverted to the general fund. These exceptions are ''balances for roads, buildings and the University of Arizona''; such balances being carried forward into the next fiscal year and used for the purposes intended by the act of appropriation. Chapter 9, chapter 35, and chapter 58, *supra,* carefully segregate the different items of expense attendant on the working of prisoners, and in each it is provided that the prison maintenance fund shall bear the proportion of the expenses equaling the maintenance cost of the prisoners at the prison; the remainder being cared for out of some other fund—that is, part is charged to maintenance and part to road construction. All of the $60,000 appropriation for the year 1926–27 was for road construction, and, giving effect to section 2 of the Financial Code, should not have been reverted.

Defendant calls our attention to the fact that chapter 58 was an emergency measure, and that section 4 thereof recites that it was enacted ''in order to relieve the congested condition existing at the Arizona State

Prison and to furnish useful employment for convicts who are being maintained at the prison in idleness," and insists that this declaration is binding upon the courts. That may be true, so far as the declaration of an emergency is concerned, but, giving it that effect, it does not follow that the character of the funds employed to carry out the declared object is changed nor make the appropriation one for maintenance of prisoners rather than one for road construction.

Under section 148 of the Financial Code, it is provided that the expenses of employing prisoners in road construction should all be paid "out of the General Fund and the appropriation for the Board of Directors for State Institutions for the State Prison authorized in the General Appropriation Bill for that purpose." Defendant contends that this policy, extending from 1922 to 1927, of charging all expenses of working prisoners to the prison fund instead of segregating such expenses and charging them to different funds, as had been done theretofore, clearly shows that the appropriation of 1926-27 was a prison fund and not a road fund.

The legislature that made the rule of the Financial Code in 1922 could not bind its successor of 1927. The latter reverted to the old rule of segregating these expenses into maintenance and road construction, as it had a right to do.

Nor do we think the situation as here presented was in any way affected because the legislature on August 11th, 1927, repealed chapter 9, title 50, and the amendments thereof. Section 2, subd. 7, of the Highway Code (Laws 1927, 4th Sp. Sess., chap. 2).

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.